**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 20, 2003**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                        No. 120437

CHRISTOPHER LAMAR HAWKINS,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                        No. 121698

MICHAEL BRANDON SCHERF,

    Defendant-Appellee.

_____

**BEFORE THE ENTIRE BENCH**

**YOUNG, J.**

    We granted leave to appeal in these cases to consider

whether the lower courts properly applied the exclusionary rule to evidence seized pursuant to (1) a search warrant that was issued in violation of MCL 780.653 and (2) a bench warrant that was issued in violation of MCR 3.606(A).

Because we conclude that neither the statute nor the court rule contemplates application of the exclusionary rule, we reverse in both cases. In *People v Hawkins* (see unpublished opinion per curiam of the Court of Appeals, issued September 28, 2001 [Docket No. 230839]), we hold that evidence of firearms and cocaine seized pursuant to a search warrant should not have been suppressed on the ground that the warrant was issued in violation of the affidavit requirements of MCL 780.653(b). In *People v Scherf* (see 251 Mich App 410; 651 NW2d 77 [2002]), we hold that evidence of marijuana seized from defendant following his arrest should not have been suppressed on the ground that the bench warrant pursuant to which he was arrested was issued in violation of the affidavit requirements of MCR 3.606(A).

## I.   FACTUAL[1] AND PROCEDURAL BACKGROUND

### A.   *PEOPLE V HAWKINS*

Detective Todd Butler of the Grand Rapids Police

---

[1]These cases have not yet been tried. Our statement of facts is derived from the preliminary examination and motion hearing transcripts and from the documentation contained in the lower court records.

Department received tips from two informants that illegal controlled substances were being sold from a residence located at 921 Humbolt, S.E., in Grand Rapids. On the basis of the information provided by these sources, Butler sought a search warrant to search the residence. Butler's affidavit set forth the following facts in support of the issuance of the warrant:

> 1. Your affiant received information from an informant on 10/14/99 that the resident of 921 Humbolt S.E. was involved in the sale of narcotics. The informant stated the residence [sic] is selling the controlled substance crack cocaine. The informant described the resident and seller of the controlled substance as "Chris," B/M, approx. 20, 5'8", 170 [lbs], medium build/complexion, short hair.

> 2. Your affiant met with a reliable and credible informant on 11/3/99. Your affiant was advised that the informant had observed the controlled substance cocaine available for sale from the residence within the past 36 hours.

> 3. Your affiant was advised by the informant the entry door to the suspects [sic] apartment has been reinforced to delay a police entry.

On November 3, 1999, a judge of the 61st District Court issued the requested warrant, and the residence was searched the same day. During the search, police seized two stolen firearms, approximately 20 grams of cocaine, and other contraband. Defendant, who was not present during the search, was stopped by police while driving his vehicle. Defendant was then arrested and later bound over for trial on several

charges.[2]

Defendant sought suppression of the evidence seized in the execution of the search warrant, arguing that the affidavit in support of the warrant was constitutionally deficient in that it did not support a finding of probable cause, the information it contained was stale, and it did not clearly reveal whether one or two informants had supplied the information. Defendant additionally contended that the affidavit did not meet the requirements of MCL 780.653(B) because it did not include information concerning the credibility of the unnamed informants or the reliability of the information they supplied.

The circuit court granted defendant's motion to suppress the evidence and dismissed the case on the grounds that the affidavit was both constitutionally deficient and in violation of MCL 780.653. The court declined the prosecutor's invitation to apply the federal "good-faith exception," under which the Fourth Amendment exclusionary rule is not applicable to evidence seized by officers acting in reasonable reliance

---

[2]Defendant was charged with possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv); maintaining a drug house, MCL 333.7405(1)(d); possession of a firearm by a felon, MCL 750.224f; driving with a suspended license, MCL 257.904(3)(b); and two counts of receiving and concealing a stolen firearm, MCL 750.535b. Additionally, defendant was charged with being a second-time drug offender, MCL 333.7413(2), and a fourth-time felony offender, MCL 769.12.

4

on a warrant that is subsequently adjudged constitutionally deficient.[3]

On appeal, the Court of Appeals affirmed the circuit court's order to suppress evidence on the sole basis that the affidavit supporting the search warrant did not meet the requirements of MCL 780.653. Slip op at 3. The panel concluded that *People v Sloan*, 450 Mich 160; 538 NW2d 380 (1995), in which this Court held that evidence obtained under a search warrant issued in violation of § 653 must be suppressed, was dispositive. Slip op at 2. Accordingly, the panel declined to address the constitutionality of the warrant or the prosecution's argument that the good-faith exception was applicable. *Id.* at 3.

We granted the prosecution's application for leave to appeal to this Court, limited to the issue whether the exclusionary rule applies to a violation of § 653. 466 Mich 860 (2002).

## B. *People v Scherf*

In a prior case, defendant pleaded guilty of manufacturing with intent to deliver between five and forty-five kilograms of marijuana in violation of MCL 333.7401(2)(D)(ii) and was sentenced to probation. Defendant

---

[3]See *Arizona v Evans*, 514 US 1; 115 S Ct 1185; 131 L Ed 2d 34 (1995); *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984).

allegedly moved out of Michigan without permission and thereafter failed to report to his probation officer in violation of two of the terms of his probation. Consequently, defendant's probation officer filed a standard form petition requesting that a bench warrant be issued for his arrest. The petition contained the following statements:

> Petitioner requests that a bench warrant be issued and Michael Brandon Scherf be arrested and held in contempt of court for the following reason(s):

> Violation of Rule Number 3: The defendant has failed to report as ordered and his whereabouts are unknown. Violation of Rule Number 4: Failure to notify agent of change of address.

The petition contained the statement, "I declare that the statements above are true to the best of my information, knowledge, and belief," and was signed by the probation officer. The district court issued the requested bench warrant.

Subsequently, police were interviewing defendant in connection with an unrelated larceny complaint when they discovered, via the Law Enforcement Information Network (LEIN), the outstanding bench warrant for his arrest. Defendant was arrested pursuant to the warrant. During a search incident to the arrest, police seized several grams of marijuana from defendant's person. Thereafter, defendant was charged with possession of marijuana in violation of MCL

6

333.7403(2)(d).

Defendant sought suppression of evidence of the marijuana on the ground that the bench warrant petition was technically deficient in that it was not supported by affidavits as required by MCR 3.606(A), which governs contempt offenses committed outside the immediate presence of the court. The prosecutor conceded that MCR 3.606(A) was violated because no affidavit was submitted in support of the probation officer's petition. The prosecutor argued, however, that the district court division of the Isabella County Trial Court should apply the federal "good-faith exception" to the exclusionary rule. The district court division denied defendant's motion, holding that the bench warrant petition was confirmed by oath or affirmation and was therefore properly issued. Additionally, the district court division noted that it found *Arizona v Evans*, 514 US 1; 115 S Ct 1185; 131 L Ed 2d 34 (1995), which reaffirmed and applied the good-faith exception, to be persuasive authority.

Defendant appealed, and the circuit court reversed the district court division's order, granted defendant's motion to suppress the marijuana evidence, and dismissed the case. The court held that although the failure to provide an affidavit with the bench warrant petition was merely "technical," it rendered the warrant invalid. The court rejected the

prosecutor's argument that the good-faith exception was applicable, stating on the record that the exception was not recognized in Michigan.

The prosecutor sought leave to appeal to the Court of Appeals, asserting that the good-faith exception should be applied under the circumstances. The Court granted the prosecutor's application and affirmed the circuit court division's order. 251 Mich App 410. The majority[4] noted that the bench warrant petition "was not supported by an affidavit as required by MCR 3.606," *id.* at 411, and that "it is undisputed that defendant's arrest, and the resultant search of defendant and seizure of evidence, were based on an invalid bench warrant and, therefore, the arrest and consequential search were unlawful," *id.* at 415. The majority indicated that it would have applied the good-faith exception to the exclusionary rule and reversed the circuit court division's decision if it were not obligated under MCR 7.215(I)(1) to follow *People v Hill*, 192 Mich App 54; 480 NW2d 594 (1991), in which another panel of the Court specifically declined to recognize the good-faith exception to the exclusionary rule.[5] 215 Mich App 415-416.

---

[4]Judge Jessica R. Cooper concurred in the result only.

[5]The Court subsequently declined to convene a special panel to resolve the potential conflict with *Hill, supra. People v Scherf*, 251 Mich App 805 (2002).

8

This Court granted the prosecutor's application for leave to appeal the judgment of the Court of Appeals. 467 Mich 856 (2002).

## II. STANDARD OF REVIEW

Questions of law relevant to a motion to suppress evidence are reviewed de novo. *People v Hamilton*, 465 Mich 526, 529; 638 NW2d 92 (2002); *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999).[6]

We must determine in these cases whether suppression of evidence is required when MCL 780.653 or MCR 3.606(A) has been violated. Where a state statute is involved, "whether suppression is appropriate is a question of statutory interpretation and thus one of legislative intent." *People v Sobczak-Obetts*, 463 Mich 687, 694; 625 NW2d 764 (2001), quoting *Stevens*, *supra* at 644, quoting *People v Wood*, 450 Mich 399, 408; 538 NW2d 351 (1995) (BOYLE, J., concurring). Similarly, "[t]he interpretation of a court rule is a question of law and is reviewed de novo." *Hinkle v Wayne Co Clerk*, 467 Mich 337, 340; 654 NW2d 315 (2002); see also *People v Petit*, 466 Mich 624, 627; 648 NW2d 193 (2002).

---

[6]See also *People v Hudson*, 465 Mich 932 (2001).

9

### III.  ANALYSIS

#### A.  INTRODUCTION

First and foremost, it is important to understand what is *not* before this Court in deciding the issues presented in these cases. We are concerned solely with application of the exclusionary rule to a statutory violation (*People v Hawkins*) and to a court rule violation (*People v Scherf*). The judgment of the Court of Appeals in *Hawkins* was based exclusively on the conceded violation of MCL 780.653, and the Court specifically declined to address the *constitutional* validity of the search warrant affidavit or the good-faith exception to the *constitutional* exclusionary rule. Likewise, in *Scherf* we are not concerned with the constitutional validity of the bench warrant or of the potential application of the good-faith exception. Although the Court of Appeals majority in *Scherf* indicated a willingness to apply the good-faith exception in order to avoid suppression of the evidence for the conceded violation of MCR 3.606(A), application of that exception would have been wholly premature, given that neither the circuit court division nor the Court of Appeals panel had found a constitutional violation in the first instance.[7]

---

[7]Moreover, defendant Scherf did not preserve for our review any argument that the affidavit in support of the issuance of the bench warrant was constitutionally deficient. Rather, his sole argument in support of his motion to suppress was that the affidavit did not meet the technical requirements of MCR 3.606(A).

With that in mind, we must determine whether the statutory and court rule violations in these cases warrant suppression of the evidence.

### B.  THE EXCLUSIONARY RULE

The exclusionary rule is a judicially created remedy that originated as a means to protect the Fourth Amendment right of citizens to be free from unreasonable searches and seizures. See *Stevens*, *supra* at 634-635; see also *Weeks v United States*, 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914), overruled on other grounds in *Elkins v United States*, 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960); *Adams v New York*, 192 US 585; 24 S Ct 372; 48 L Ed 575 (1904); *Boyd v United States*, 116 US 616; 6 S Ct 524; 29 L Ed 746 (1886).  The exclusionary rule, modified by several exceptions,[8] generally bars the introduction into evidence of materials seized and observations made during an unconstitutional search. *Stevens*, *supra* at 634, 636.  However, application of the exclusionary

---

[8]For example, the " good-faith exception," which has been asserted by the prosecutors in the cases at bar, permits admission of evidence seized by police officers in reasonable reliance on a constitutionally defective search warrant.  See *Arizona*, *supra*; *Leon*, supra.  As noted, because of the procedural posture of the instant cases, we do not reach the constitutionality of the warrants at issue and, consequently, we do not address the applicability of the good-faith exception to a violation of Michigan's counterpart to the Fourth Amendment, Const 1963, art 1, § 11.  We note that leave has recently been granted in *People v Goldston*, 467 Mich 938 (2003), in which this Court will consider whether to adopt and apply a good-faith exception to the exclusionary rule.

11

rule is not constitutionally mandated, and

> [t]he question whether the exclusionary rule's remedy is appropriate in a particular context [is] regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct. [*Illinois v Gates*, 462 US 213, 223; 103 S Ct 2317; 76 L Ed 2d 527 (1983).]

Moreover, the exclusionary rule is not designed to "make whole" a citizen who has been subjected to an unconstitutional search or seizure.  Rather, the aim of the rule is one of police deterrence:

> The wrong condemned by the [Fourth] Amendment is "fully accomplished" by the unlawful search or seizure itself . . . and the exclusionary rule is neither intended nor able to "cure the invasion of the defendant's rights which he has already suffered." . . . The rule thus operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." . . . . [*United States v Leon,* 468 US 897, 906; 104 S Ct 3407; 82 L Ed 2d 677 (1984).]

Irrespective of the application of the exclusionary rule in the context of a *constitutional* violation, the drastic remedy of exclusion of evidence does not necessarily apply to a *statutory* violation.[9]  Whether the exclusionary rule should

---

[9]The exclusionary rule is particularly harsh in that it is neither narrowly tailored nor discerning of the magnitude of the error it is intended to deter.  By taking no cognizance of the effect of a police error upon a particular defendant, or of the actual guilt or innocence of a defendant, the exclusionary rule lacks proportionality.  Given these characteristics, we decline to expand the use of this rule in

(continued...)

12

be applied to evidence seized in violation of a statute is purely a matter of legislative intent. *Hamilton*, *supra* at 534.

> "'Because our judicial role precludes imposing different policy choices from those selected by the Legislature, our obligation is, by examining the statutory language, to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. . . . When a statute is clear and unambiguous, judicial construction or interpretation is unnecessary and therefore, precluded.'" [*Sobczak-Obetts*, *supra* at 694-695 (citations omitted).]

Likewise, whether suppression of evidence on the basis of the violation of a court rule is appropriate is controlled by the language of the rule. "This Court applies principles of statutory interpretation to the interpretation of court rules. When the language is unambiguous, we must enforce the meaning plainly expressed, and judicial construction is not permitted." *Hinkle*, *supra* at 340.

### C. *People v Hawkins*

At issue in *Hawkins* is whether evidence seized from a residence pursuant to a search warrant was properly suppressed because the affidavit supporting the search warrant did not meet the requirements of MCL 780.653 in Michigan's search warrant act, MCL 780.651 to 780.659. MCL 780.653 provides, in

---

[9](...continued)
the absence of an explicit constitutional or legislative requirement.

13

pertinent part:

> The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
>
> * * *
>
> (b) If the person is unnamed, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.[10]

MCL 780.653(b) derives from the defunct "two-pronged test" enunciated by the United States Supreme Court in *Aguilar v Texas*, 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States*, 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969), for determining whether an anonymous informant's tip established probable cause for issuance of a search warrant. See *People v Sherbine*, 421 Mich 502, 509; 364 NW2d 658 (1984). Under the *Aguilar-Spinelli* formulation as it was

---

[10]Section 1 of the search warrant act, MCL 780.651, provides in part:

> (1) When an affidavit is made on oath to a magistrate authorized to issue warrants in criminal cases, and the affidavit establishes grounds for issuing a warrant pursuant to this act, the magistrate, if he or she is satisfied that there is probable cause for the search, shall issue a warrant to search the house, building, or other location or place where the property or thing to be searched for and seized is situated.

generally understood, a search warrant affidavit based on information supplied by an anonymous informant was required to contain both (1) some of the underlying circumstances evidencing the informant's basis of knowledge and (2) facts establishing either the veracity or the reliability of the information. See *Gates*, *supra* at 228-229; *Sherbine*, *supra* at 509.[11]

This Court has previously held that a violation of the affidavit requirements of MCL 780.653 warranted suppression of evidence. *Sloan*, *supra*; *Sherbine*, *supra*. Because we are unable to conclude that the Legislature intended application of the exclusionary rule where the requirements of § 653 have not been met, we overrule *Sloan* and *Sherbine* to the extent that they so hold, and we conclude that defendant was not entitled to suppression of evidence on the basis of the statutory violation.

In *Sherbine*, this Court held that suppression of evidence

---

[11]In *Gates*, the United States Supreme Court abandoned the *Aguilar-Spinelli* two-pronged test in favor of a "totality of the circumstances" approach. Accordingly, in determining whether a search warrant affidavit that is based on hearsay information passes Fourth Amendment muster,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. [*Gates*, *supra* at 238.]

15

was required where a search warrant affidavit violated a previous version of § 653[12] in that it did not make any showing that an informant was a credible person *and* that he supplied reliable information.[13]   Although this Court specifically declined to decide whether satisfaction of the federal *Aguilar-Spinelli* test is required under Const 1963, art 1, § 11—that is, whether the requirements of § 653 are rooted in Michigan's constitutional search and seizure provision—this Court nevertheless applied the exclusionary rule to the statutory violation.   In so doing, this Court failed to examine the language of § 653 to determine whether the Legislature intended that such a drastic remedy be applied to a violation of the statutory affidavit requirements.  Rather, this Court relied on *People v Dixon*, 392 Mich 691; 222 NW2d

---

[12]In 1984, § 653 provided:

> The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him.  The affidavit may be based upon reliable information supplied to the complainant from a credible person, named or unnamed, so long as the affidavit contains affirmative allegations that the person spoke with personal knowledge of the matters contained therein.

[13]We concluded in *Sherbine* that preamendment § 653 *expanded* the *Aguilar-Spinelli* test to require that the affidavit set forth facts showing *both* that a confidential informant was credible and that the information was reliable. *Sherbine*, *supra* at 509-510.  The current version of § 653, as amended by 1988 PA 80, makes clear that a showing of *either* credibility *or* reliability is required.

16

749 (1974), in which this Court similarly applied the exclusionary rule to a statutory violation without performing the requisite examination of legislative intent.[14]  We concluded, "The statutory violation here is clear.  The statute requires proof that the informant who supplied the information be credible.  The affidavit here failed to satisfy this requirement.  The evidence must therefore be suppressed." *Sherbine, supra* at 512.

Justice Boyle dissented, opining that preamendment § 653 required a showing of *either* reliability *or* credibility, and that this Court had misconstrued the statute as an expansion of *Aguilar.  Sherbine,* 421 Mich 513-514.  Additionally, Justice Boyle questioned whether suppression of the evidence was required under the circumstances:  "I cannot conceive of a reason why we should apply the exclusionary rule to the supposed violation of a statute where the affidavit would pass

---

[14]In *Dixon*, this Court held that suppression of evidence was required, and reversed the defendant's conviction on the ground that a search of the defendant at a police station was in derogation of his right to bail under MCL 780.581.  This Court cited decisions from California and Oregon courts suppressing evidence for similar statutory violations, but noted that in several of those decisions the courts specifically found *Fourth Amendment* violations.  *Id.* at 704, n 18.  Acknowledging that its decision was *not* premised on the Fourth Amendment, *id.,* this Court nevertheless concluded that suppression of evidence obtained in derogation of the statutory right to bail was required  because "no other remedy [was] as likely to assure its full enforcement," *id.* at 705.

17

constitutional muster under either Const 1963, art 1, § 11, or US Const, Am IV . . . ." *Id*. at 516.

In *Sloan*, this Court held that a violation of a different provision in the current version of § 653 required application of the exclusionary rule. A search warrant was issued to obtain a blood test from the defendant, who was later charged with manslaughter with a motor vehicle,[15] operating a motor vehicle while under the influence of intoxicating liquor causing death,[16] and felonious driving.[17] The portion of § 653 at issue was the provision that "[t]he magistrate's finding of reasonable or probable cause shall be based on all the facts related within the affidavit made before him or her." This Court held that this provision was violated when the magistrate looked beyond the affidavit, to unrecorded oral testimony of a police officer, in issuing the search warrant.[18] Relying on *Sherbine*, this Court further concluded that the blood test evidence had to be excluded because of the

---

[15]MCL 750.321.

[16]MCL 257.625(4).

[17]MCL 752.191.

[18]As in *Sherbine*, the *Sloan* Court specifically stated that it was not addressing whether the probable cause determination was constitutionally defective. *Sloan*, *supra* at 183 n 17. Indeed, this Court noted that the affidavit requirement of § 653 was *not* constitutionally mandated under either Const 1963, art 1, § 11 or the Fourth Amendment. *Id.*

statutory violation:

> In *Sherbine*, we held that evidence obtained specifically in violation of MCL 780.653 . . . must be excluded. The Legislature appears to have acquiesced in this particular construction of MCL 780.653 . . . . While the Legislature subsequently amended MCL 780.653 . . . because it disagreed with portions of our statutory analysis provided in *Sherbine*, it is significant that the Legislature when instituting such amendments did not alter our holding that evidence obtained in violation of the statute must be excluded. To change the law in that regard would have been an easy and convenient task for the Legislature. Neither the language in the amendments, nor the legislative history pertinent to the amendments provide a basis for concluding that a sanction other than exclusion is appropriate for the violation of MCL 780.653 . . . . Clearly, the Legislature shares our view that no remedy other than exclusion is as likely to assure the full enforcement of all of the requirements under MCL 780.653 . . .—a statute specifically designed by the Legislature to implement the constitutional mandate for probable cause under Const 1963, art 1, § 11. [*Sloan*, *supra* at 183-184.]

Justice Boyle, joined by Justices Riley and Weaver, dissented, arguing that the statute was complied with and that, in any event, a violation of § 653 did not require application of the exclusionary rule:

> Application of the exclusionary rule to any technical violation of our search warrant statute that may have occurred in the present case is unwarranted. Particularly where the magistrate is a sitting judge, as are virtually all magistrates in this state, I cannot conclude that the risk of relying on after-the-fact allegations are [sic] so substantial that we must suppress evidence. The exclusionary rule is intended to serve a deterrent purpose, and loses any useful force and effect when applied to technical errors that do not rise to the level of negligent or wilful conduct, serving then

19

only to deprive the trier of fact of relevant and probative evidence. As explained by the United States Supreme Court in *Michigan v Tucker*, 417 US 433, 446-447; 94 S Ct 2357; 41 L Ed 2d 182 (1974):

* * *

"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force." [*Sloan*, *supra* at 200 (Boyle, J., dissenting).]

Justice Boyle additionally criticized the majority's invocation of the "legislative acquiescence" doctrine:

The majority's assertion of legislative acquiescence in the decision in *Sherbine* . . . to use of the exclusionary rule to suppress evidence obtained in alleged violation of the statute before us is wholly mistaken. In *Sherbine*, this Court's majority interpreted the former version of the statute as if it imposed a more restrictive standard than the Fourth Amendment and suppressed evidence on the basis of that consideration. The swift reaction of the Legislature was to amend MCL 780.653 . . . to make it clear that the Court was incorrect in concluding that what had occurred was a statutory violation. The Legislature had no need to say what should not be excluded; it relied on the Court's word that were it clear that the Legislature had authorized the warrant, suppression would not be ordered.

Acting on our representation, the amended legislation tracked the Fourth Amendment. Because "our holding that evidence obtained in violation of the statute must be excluded" . . . was wholly derived from our narrow reading of MCL 780.653 . . . , the legislative amendment of the statute is not an

20

acquiescence in, but rather a repudiation of, the view in *Sherbine* that the evidence should be excluded. [*Sloan*, *supra* at 202-203 (BOYLE, J., dissenting).]

We agree with Justice Boyle and once again reaffirm that where there is no determination that a statutory violation constitutes an error of constitutional dimensions, application of the exclusionary rule is inappropriate unless the plain language of the statute indicates a legislative intent that the rule be applied. *Hamilton*, *supra* at 534; *Sobczak-Obetts*, *supra* at 694. Moreover, we reject the *Sloan* Court's conclusion that the Legislature's silence constituted agreement with this Court's application of the exclusionary rule in *Sherbine*. As we have repeatedly stated, the "legislative acquiescence" principle of statutory construction has been squarely rejected by this Court because it reflects a critical misapprehension of the legislative process. See *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 760 n 15; 641 NW2d 567 (2002); *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 177-178 n 33; 615 NW2d 702 (2000). Rather, "Michigan courts [must] determine the Legislature's intent from its *words*, not from its silence." *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 596 NW2d 574 (1999).

The dissent asserts that "the majority [has] imposed its own policy on the Legislature . . . ." *Post* at 10. Respectfully, we disagree and believe that it is not *this*

21

majority but the *Sherbine* and *Sloan* majorities that imposed their own policy choices on the Legislature with respect to the application of the exclusionary rule to a violation of § 653. Citing nothing in the text of the statute, the *Sherbine* Court simply declared, without further analysis, that because the statute was violated, "[t]he evidence must . . . be suppressed." *Sherbine, supra* at 512. Similarly, the *Sloan* majority opined that "no remedy other than exclusion is as likely to assure the full enforcement of all of the requirements under MCL 780.653 . . . ." *Sloan, supra* at 184.

The dissent purports to apply a "contextual analysis" of § 653 in reaching the conclusion that the Legislature intended the exclusionary rule to apply to a violation of that statute. Yet, as the dissenters readily admit, the text of § 653 is entirely silent in this regard. *Post* at 2-3, generally. Clearly, there is no principled basis for the contention that this Court's injection of the exclusionary rule in *Sherbine* and *Sloan* is grounded in the statutory text.

The dissent attempts to draw a distinction between legislative silence and reenactment of a statute following judicial interpretation. While we have no reason to contest that the "reenactment doctrine" can sometimes be a useful tool for determining legislative intent where the statutory language is ambiguous, such a tool of construction may not be

utilized to subordinate the plain language of a statute. This Court's constitutional charge to interpret the laws does not end merely because the Legislature reenacts a statute.[19] In the absence of a clear indication that the Legislature intended to either adopt or repudiate this Court's prior construction, there is no reason to subordinate our primary principle of construction–to ascertain the Legislature's intent by first examining the statute's language–to the reenactment rule.[20]

---

[19]Taken to its logical conclusion, application of the reenactment doctrine under circumstances such as those present in the case at bar would undoubtedly lead to results never anticipated or intended by the Legislature. For example, suppose that the Legislature amends a statutory code to make all pronouns gender-neutral, but otherwise reenacts the code as originally written. It would be neither accurate nor reasonable to presume, as the dissent would have us do, that the Legislature intended to adopt *in toto* every appellate decision construing or applying the code.

[20]Even the United States Supreme Court has acknowledged that there has been no stable, consistent formulation of this amorphous doctrine. *Helvering v Griffiths*, 318 US 371, 396; 63 S Ct 636; 87 L Ed 843 (1943). Under the broadest formulation of the reenactment doctrine, there is no reason why only *judicial* interpretations of statutes should be incorporated by implication upon reenactment of a statute. Indeed, even *administrative interpretations* of statutes have been recognized as binding. See *United States v Safety Car Heating & Lighting Co*, 297 US 88, 95; 56 S Ct 353; 80 L Ed 500 (1936).

Our point is not that the reenactment doctrine, properly limited and applied, is without value as a statutory construction aid, but that it cannot be employed indiscriminately and without recognition of the fact that its more expansive versions impose an unreasonable burden on the

(continued...)

The Legislature has stated its views on the construction of its statutes, in part by providing that all words and phrases that are not terms of art[21] be given their "common and

[20](...continued)
Legislature to affirmatively scan our appellate casebooks to discern judicial constructions of statutes that the Legislature desires for entirely other reasons to amend. Applying the reenactment rule here would, in our view, be the effective equivalent of imposing an *affirmative duty* on the Legislature to keep abreast of all binding judicial pronouncements involving the construction of statutes and to revise those statutes to repudiate any judicial construction with which it disagrees. For similar reasons, we have rejected precisely such a duty in other contexts. See, e.g., *Donajkowski, supra* at 261-262.

To apply the reenactment doctrine under these circumstances would not only likely fail to give effect to legislative intent, but would also presumably violate separation of powers principles. See Grabow, *Congressional silence and the search for legislative intent: A venture into "speculative unrealites,"* 64 BUL R 737, 759-761 (1984). Accordingly, before we ignore the plain meaning of the text of a statute, we reject formulations of the reenactment doctrine involving circumstances that fail to demonstrate the Legislature's *conscious consideration* of a judicial decision, coupled with some compelling indication that the Legislature *intended* to accept or reject that interpretation. As is illustrated by Justice Boyle's dissent in *Sloan, supra*, discussed at pp 22-23, it is a perilous exercise to attempt to discern legislative intent from the Legislature's silence, even when a statutory amendment responds to *some portion* of a judicial decision. See *Sloan, supra* at 202-203.

[21]We note that in the case of a *term of art*, application of the "reenactment rule" would generally be appropriate because such a term by definition carries with it the construction accorded it by the courts. See *People v Law*, 459 Mich 419, 425 n 8; 591 NW2d 20 (1999). In contrast, in this case we are confronted with the amendment of a statute following the imposition of a judicially created remedy that is grounded nowhere in the *text* of the statute. Our dissenting colleagues opine that "the Legislature could have
(continued...)

approved" meanings. MCL 8.3a. Such is consistent with our most fundamental principle of construction that there is no room for judicial interpretation when the Legislature's intent can be ascertained from the statute's plain and unambiguous language. See *Stanton v Battle Creek*, 466 Mich 611, 615; 647 NW2d 508 (2002). Accordingly, we decline to apply the "reenactment rule" when the Legislature's intent is evidenced by the plain language of the statute and there is no clear indication of any intent to adopt or repudiate this Court's prior construction.

Nothing in the plain language of § 653 provides us with a sound basis for concluding that the Legislature intended that noncompliance with its affidavit requirements, standing alone, justifies application of the exclusionary rule to evidence obtained by police in reliance on a search warrant.[22]

---

[21](...continued) easily modified the applicability of the exclusionary rule when enacting 1988 PA 80," *post* at 6-7, and that therefore the Legislature must have intended to adopt, *sub silentio*, the exclusionary rule. However, an equally plausible conclusion is that, because the Legislature could easily have modified the statute to *expressly provide* for the application of the exclusionary rule, it must have intended to reject this Court's decision in *Sherbine*. This precisely illustrates one of the reasons that the "legislative acquiescence" doctrine is an untrustworthy indicator of legislative intent, as well as why the "reenactment rule" should not be applied as an aid in interpreting legislative *silence*.

[22]Any error concerning the search warrant in this case rests squarely on the shoulders of the district court judge, (continued...)

Moreover, application of the exclusionary rule is particularly inappropriate under the circumstances of this case, where the objective of the rule—to sanction police misconduct as a means of deterrence—would not be served.[23] See *Sobczak-Obetts*, *supra* at 712. Because we applied the exclusionary rule to the statutory violations at issue in *Sherbine* and *Sloan* without performing the requisite examination of legislative intent, we are compelled to overrule those decisions to the extent that they conflict with today's holding.[24]

---

[22](...continued)
whose duty it is to ensure that warrants are issued in compliance with state and federal law. There is no indication in the record that the officer who applied for the search warrant, or the officers who executed the warrant, acted improperly.

[23]Indeed, we note that the Legislature has specifically provided for a sanction in the case of misconduct in the execution or procurement of a search warrant. See MCL 780.657 ("[a]ny person who in executing a search warrant, wilfully exceeds his authority or exercises it with unnecessary severity, shall be fined not more than $1,000.00 or imprisoned not more than 1 year"); MCL 780.658 ("[a]ny person who maliciously and without probable cause procures a search warrant to be issued and executed shall be fined not more than $1,000.00 or imprisoned not more than 1 year"). That the Legislature has elected to deter police misconduct in the manner indicated by MCL 780.657 and MCL 780.658 further evidences the lack of any legislative intent that the exclusionary rule be applied under the circumstances of this case.

[24]Our dissenting colleagues charge us with ignoring this Court's prohibition-era decisions in *People v Knopka*, 220 Mich 540; 190 NW 731 (1922), *People v Moten*, 233 Mich 169; 206 NW
(continued...)

Accordingly, we conclude that the Court of Appeals erred in holding that suppression of the evidence was required as a remedy for the violation of § 653 in this case. Because the Court of Appeals declined to address the prosecutor's additional arguments on appeal, we remand this matter to that Court for further proceedings.

### D. *People v Scherf*

The Court of Appeals held in *Scherf* that a bench warrant issued in violation of a court rule was invalid and that suppression of evidence obtained in connection with defendant's arrest pursuant to that warrant was therefore

---

[24](...continued)
506 (1925), *People v Bules*, 234 Mich 335; 207 NW 818 (1926), and *People v Galnt*, 235 Mich 646; 209 NW 915 (1926), all of which involved search warrant requirements as set forth in § 27 of Michigan's "liquor law," 1922 CL 7079(27). As we explained in *Sobczak-Obetts, supra, Knopka* involved a violation of Const 1908, art 2, § 10, not merely a statutory violation. The *Moten* and *Bules* Courts applied, without analysis, the *Knopka* exclusionary rule to purely statutory search warrant violations. The *Galnt* Court, similarly to the *Knopka* Court, expressly found a *constitutional* violation. The *Moten* and *Bules* decisions, which conclusorily applied the exclusionary rule without determining that there was any constitutional violation, are distinguishable in any event because they did not involve the search warrant statute at issue. See *Sobczak-Obetts, supra* at 700 n 11. Moreover, as we noted in *Sobczak-Obetts, supra* at 707, the statutory violations in *Moten, Bules, and Galnt* pertained to the warrant form; in such a case, "the resulting search may be *constitutionally* defective." (Emphasis in original.) As we have taken pains in this opinion to make clear, we are reviewing only the Court of Appeals application of the exclusionary rule to the alleged violations of a statute and a court rule, and we do not address any claims that the warrants at issue were *constitutionally* insufficient.

27

required.  We disagree.

MCR 3.606(A) provides:

> Initiation of Proceeding.  For a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either
>
> (1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or
>
> (2) issue a bench warrant for the arrest of the person.

Nothing in the wording of MCR 3.606(A) provides any indication that the exclusionary rule should be applied to a violation of its affidavit requirement.[25]  To engraft the exclusionary rule—a harsh remedy designed to sanction and deter *police* misconduct where it has resulted in a violation of *constitutional* rights—onto the technical provisions of a *rule of court* in this manner would extend the deterrent well beyond its intended application.  Indeed, the task of scrutinizing the police papers submitted in support of a warrant for technical compliance with the law falls squarely with the judicial officer.  In the absence of language

---

[25]In light of the prosecutor's concession of error, we need not address whether the issuance of the bench warrant was *actually* violative of the affidavit requirement of MCR 3.606(A).

evincing an intent that suppression of evidence should follow from the violation of MCR 3.606(A), we decline to infer one.

## IV. CONCLUSION

The exclusionary rule was improperly applied to the violations of the statutory and court rule affidavit requirements at issue in these cases. We cannot conclude, on the basis of the plain language of MCL 780.653, that the Legislature intended that noncompliance with its terms should result in suppression of evidence obtained by police acting in reasonable and good-faith reliance on a search warrant. Likewise, MCR 3.606(A) does not provide for suppression of evidence on the basis of noncompliance with its affidavit requirement, and we decline to infer an intent that the exclusionary rule should apply under these circumstances.

In *Hawkins*, we reverse the judgment of the Court of Appeals and remand to that Court for further proceedings. In *Scherf*, we reverse the judgment of the Court of Appeals and remand the matter to the district court division for further proceedings. We do not retain jurisdiction.

Robert P. Young, Jr.
Maura D. Corrigan
Clifford W. Taylor
Stephen J. Markman

29

# S T A T E   O F   M I C H I G A N

## SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                          No.  120437

CHRISTOPHER LAMAR HAWKINS,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                          No.
                                     121698

MICHAEL BRANDON SCHERF,

    Defendant-Appellee.


_____

WEAVER, J. *(concurring)*.

    I concur in the majority's holding that the violations of MCL 780.653(b) and MCR 3.606(A) do not require suppression of the evidence seized in these cases.  I write separately to note that I do not believe the reenactment rule can be relied on in the present cases.  As explained by Justice Boyle in her dissent in *People v Sloan*, 450 Mich 160, 202-203; 538 NW2d 380 (1995), in which I joined,

The [*Sloan*] majority's assertion of legislative acquiescence in the decision in *Sherbine*,[1] to use of the exclusionary rule to suppress evidence obtained in alleged violation of the statute before us is wholly mistaken. In *Sherbine*, this Court's majority interpreted the former version of the statute as if it imposed a more restrictive standard than the Fourth Amendment and suppressed evidence on the basis of that consideration. The swift reaction of the Legislature was to amend MCL 750.653; MSA 28.1259(3), to make it clear that the Court was incorrect in concluding that what had occurred was a statutory violation. The Legislature had no need to say what should not be excluded; it relied on the Court's word that were it clear that the Legislature had authorized the warrant, suppression would not be ordered.

Acting on our representation, the amended legislation tracked the Fourth Amendment. Because "our holding that evidence obtained in violation of the statute must be excluded," *ante* at 183 (Cavanagh, J.), was wholly derived from our narrow reading of MCL 780.653; MSA 28.1259(3), the legislative amendment of the statute is not an acquiescence in, but rather a repudiation of, the view in *Sherbine* that the evidence should be excluded.

However, while I do not believe the reenactment rule should be relied on in the present cases for the reasons outlined by Justice Boyle, my opinion should not be construed to mean that the rule may not be relied on in other cases where it is appropriate.

Elizabeth A. Weaver

---

[1] *People v Sherbine*, 421 Mich 502; 364 NW2d 658 (1984).

2

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                                No. 120437

CHRISTOPHER LAMAR HAWKINS,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                                No. 121698

MICHAEL BRANDON SCHERF,

    Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

    Today the majority discounts decades of precedent in order to adopt its preferred policy of limiting application of the exclusionary rule. Because contextual interpretations of the statute and the court rule mandate use of the exclusionary rule, and because the task of altering our state's policy concerning statutory remedies belongs to the Legislature, I must respectfully dissent.

MCL 780.653

Like the majority, I agree that a contextual analysis of MCL 780.653 will determine the appropriate remedy for its violation. However, I depart from the majority's analysis insofar as it neglects material rules of statutory interpretation.

Since its enactment in 1966, MCL 780.653 has codified the requirement that search warrants issue only upon a finding of probable cause, giving form to the constitutional protection against unreasonable searches and seizures. The provision clarifies that information in support of a warrant must be supplied by an individual who has personal knowledge of the facts alleged. MCL 780.653, as amended by 1988 PA 80, provides:

> The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
>
> (a) If the person is named, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information.
>
> (b) If the person is unnamed, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.

Similarly to the federal and state constitutional prohibition against the issuance of a warrant without

2

probable cause, the text of this subsection provides no specific guidance about the requisite judicial response to its violation. Statutory construction is, therefore, required. *In re MCI*, 460 Mich 396; 596 NW2d 164 (1999). Although the consequence of an infraction is not prescribed, 1966 PA 189 does authorize a penalty for those who intentionally exceed their authority when executing a warrant, who exercise such authority with unnecessary severity, or who maliciously procure a warrant. See MCL 780.657, 780.658.[1] While I agree that these statutory provisions must inform our understanding of MCL 780.653, I am not persuaded that they mandate the result envisioned by the majority.

As an initial matter, the penalty provisions only pertain to a small number of violations. Most violations of 1966 PA 189 are not caused by wilful misconduct. If the criminal provisions are deemed the exclusive remedy for any

_____

[1] MCL 780.657 provides:

Any person who in executing a search warrant, wilfully exceeds his authority or exercises it with unnecessary severity, shall be fined not more than $1,000.00 or imprisoned not more than 1 year.

MCL 780.658 provides:

Any person who maliciously and without probable cause procures a search warrant to be issued and executed shall be fined not more than $1,000.00 or imprisoned not more than 1 year.

violation of this act, its directives would have no force.

Unlike the majority, I cannot conclude that the presence of criminal penalties for rare incidents of extreme misconduct indicates a legislative intent to displace the exclusionary rule.  To so hold would assume the Legislature promulgated an impotent (or ineffectual) statute.[2]  For this reason, I find several other well-respected doctrines of interpretation more compelling.

Among them is the strong presumption that a high court's construction of a statute should be given a heightened stare decisis effect.  As noted by the United States Supreme Court,

> [the] reluctance to overturn precedents derives in part from institutional concerns about the relationship of the Judiciary to Congress.  One reason that we give great weight to *stare decisis* in the area of statutory construction is that *"Congress is free to change this Court's interpretation of its legislation."* *Illinois Brick Co v Illinois,* 431 US 720, 736[; 97 S Ct 2061; 52 L Ed 2d 707] (1977).  We have overruled our precedents when the intervening development of the law has "removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies." *Patterson v McLean Credit Union,* 491 US 164, 173[; 109 S Ct 2363; 105 L Ed 2d 132] (1989) (citations omitted).  Absent those changes or compelling evidence bearing on Congress' original intent, *NLRB v Longshoremen,* 473 US 61, 84[; 105 S Ct 3045; 87 L Ed 2d 47] (1985), our system demands that we

---

[2] See *People v Sobczak-Obetts*, 463 Mich 687, 713-716; 625 NW2d 764 (2001) (Cavanagh, J., dissenting); *People v Stevens (After Remand),* 460 Mich 626, 648-666; 597 NW2d 53 (1999) (Cavanagh, J., dissenting).

4

adhere to our prior interpretations of statutes. [*Neal v United States,* 516 US 284, 295; 116 S Ct 763; 133 L Ed 2d 709 (1996) (emphasis added).]

Because this Court shares a similar relationship with the Michigan Legislature, I find no reason to reject this Court's precedent in *People v Sloan*, 450 Mich 160; 538 NW2d 380 (1995), or *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984), which clarify that evidence obtained in violation of MCL 780.653 must be suppressed.

In *Sherbine,* this Court held that the exclusionary rule is the proper remedy for a violation of MCL 780.653. In support, the Court cited *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974), *People v Chartrand,* 73 Mich App 645; 252 NW2d 569 (1977), and *State v Russell,* 293 Or 469; 650 P2d 79 (1982). *Sherbine, supra* at 512 and ns 18-21.

Ten years later, this Court affirmed the application of the exclusionary rule for violations of MCL 780.653 (§ 653) in *Sloan, supra.* In *Sloan,* this Court held that a magistrate must base the probable-cause determination on the record (i.e., an affidavit is necessary; sworn testimony is insufficient), and that a violation of this statute requires the exclusion of tainted evidence. The Court's rationale was based, in part, on the Legislature's acquiescence to the application of the exclusionary rule as expressed in *Sherbine*. In 1988, the Legislature revised § 653 in response

5

to *Sherbine*, overruling by legislative enactment the informant- reliability standard. In doing so, it approved the use of the exclusionary rule to redress violations of § 653.

Though one might be tempted to dismiss the authoritative value of *Sloan* on the basis of its stated reliance on the now disfavored doctrine of legislative acquiescence, a close examination reveals the Court utilized a related—but quite distinct—rule of interpretation, i.e., the reenactment rule. If a legislature reenacts a statute without modifying a high court's practical construction of that statute, that construction is implicitly adopted. See Singer, 28 Statutes and Statutory Construction (2000 rev), Contemporaneous Construction, § 49:09, pp 103-112. The reenactment rule differs from the legislative-acquiescence doctrine in that the former canon provides "prima facie evidence of legislative intent" by the adoption, without modification, of a statutory provision that had already received judicial interpretation. *Id.* at 107. As articulated by the United States Supreme Court, a legislature "is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it [reenacts] a statute without change . . . ." *Lorillard, a Div of Loew's Theatres, Inc v Pons,* 434 US 575, 580; 98 S Ct 866; 55 L Ed 2d 40

(1978).  As I noted in *Sloan*, the Legislature could have easily modified the applicability of the exclusionary rule when enacting 1988 PA 80.  By altering the text to renounce the informant rule modified in *Sherbine*, while reenacting the remaining text, the Legislature indicated its detailed knowledge of *Sherbine* and approved the use of the exclusionary rule for violations of § 653.[3]

Long before the Legislature incorporated the exclusionary rule into MCL 780.653, this Court adopted a presumption in favor of utilizing the exclusionary rule for statutory violations.  Over eighty years ago, in *People v Knopka*, 220 Mich 540, 545; 190 NW 731 (1922), the Court suppressed evidence obtained by warrant issued without

---

[3]The majority's attempt to diminish the value of the reenactment doctrine is misguided.  As noted above, the rule merely provides prima facie evidence of legislative intent, and a bill replacing male pronouns with neutral pronouns throughout the code–as suggested in the majority opinion, *ante* at 23 n 19–would *not* justify a strong presumption in favor of its application because there would be no indication that the Legislature thoughtfully familiarized itself with the subsections modified.  Application of the reenactment rule in this case, by contrast, does shed light on the scope of the Legislature's familiarity with *Sherbine, supra*.

Further, unlike the majority, I have more faith in the Legislature's ability to competently execute its duties.  To assume the Legislature would not familiarize itself with the whole of a particular case when revising one subsection of the code in response to that very case does not, as the majority suggests, "violate separation of powers principles." *Ante* at 24 n 20.  Rather, reference to the reenactment rule under such circumstances simply acknowledges legislative competency.

probable cause:

> It not appearing that the search warrant was issued upon the constitutional and statutory showing of probable cause, it must be held that the evidence procured by it was inadmissible and should have been suppressed and that, with such evidence out, defendant should have been discharged.

In reaching this conclusion, the Court focused exclusively on the statutes establishing search-warrant requirements. Three years later, in *People v Moten*, 233 Mich 169; 206 NW 506 (1925), the Court again applied the exclusionary rule to remedy a statutory violation, relying, in part, on *Knopka.* See also *People v Bules,* 234 Mich 335; 207 NW 818 (1926) (reversing a conviction on the basis of evidence obtained in violation of statutory warrant requirements); *People v Galnt,* 235 Mich 646; 209 NW 915 (1926) (discharging the defendant where evidence obtained in violation of statute required suppression).

Although this Court has recently attempted to narrow the import of *Moten* and its progeny, the distinction is particularly inapposite here. In *People v Sobczak-Obetts*, 463 Mich 687; 625 NW2d 764 (2001), the majority distinguished the *Moten-Bules-Galnt* trilogy because each analyzed substantive warrant requirements, i.e., the sufficiency of a warrant's "form," whereas the statute at issue in *Sobczak-Obetts* concerned procedures relevant to warrant execution.

8

See also *People v Hamilton,* 465 Mich 526; 638 NW2d 92 (2002)(holding that an absence of statutory authority did not warrant application of the exclusionary rule where the statute was meant to protect the rights of autonomous local governments); *People v Stevens (After Remand),* 460 Mich 626; 597 NW2d 53 (1999) (holding that failure to comply with the knock-and- announce rule did not warrant application of the exclusionary rule). However, this distinction between substantive and procedural interests collapses when applied to defendant Hawkins, who challenged the warrant issued for his arrest on substantive grounds, maintaining the affidavit contained neither credible nor reliable allegations. The trial court agreed: "The affidavit clearly does not conform with Michigan statutory authority; namely, MCL 780.653(B)." Regrettably, the majority today conflates substantive and procedural concerns, ignores decades of precedent, and—in spite of evidence to the contrary—disregards the Legislature's unambiguous approval of the application of the exclusionary rule for violations of MCL 780.653. See 1988 PA 80.

Until the tide began to shift with *Stevens (After Remand),* the use of the exclusionary rule to remedy statutory violations was well settled. By dismissing the import of this Court's precedent, including *Moten, Bules, Sherbine,*

*Sloan,* et al., the majority has imposed a policy-based doctrine that requires express statements to authorize application of the exclusionary rule. *Ante* at 21. This runs afoul of the Legislature's approval of the rule's application to MCL 780.653 as articulated in *Sherbine*. 1988 PA 80.

While I can appreciate the majority's need to balance important and competing interests, I take issue with its attempt to ground the analysis in the text of MCL 780.653. Moreover, shifting the focus to a "clear statement" policy works a bait-and-switch on the Legislature. Not only has the majority imposed its own policy on the Legislature, it has displaced the controlling interpretive standard—on which our Legislature has relied—under the guise of strict textualism.

## MCR 3.606(A)

The majority concludes that the exclusionary rule is an inappropriate remedy because the text of MCR 3.606(A) does not specifically demand its application. *Ante* at 25. "When called on to construe a court rule, this Court applies the legal principles that govern the construction and application of statutes. . . . Accordingly, we begin with the plain language of the court rule." *Grievance Administrator v Underwood*, 462 Mich 188, 193-194; 612 NW2d 116 (2000). Applied here, the doctrine clarifies our rule's rigorous demands. MCR 3.606(A) provides:

10

Initiation of Proceeding.  For a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either:

(1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or

(2) issue a bench warrant for the arrest of the person.

As required by this rule, before contempt proceedings may be initiated for any conduct outside of the court's "immediate view," a party must provide "a proper showing on ex parte motion supported by affidavits . . . ." A motion alone is insufficient.  An affidavit, i.e., "a signed statement," must be provided.  Once this requirement is met, the court must either order the accused person to prove why punishment should not be inflicted or issue a bench warrant.

In the light of the potential peril, as well as the substantive safeguards contained in MCR 3.606(A), I find it particularly troublesome that the majority members suggest such rules are mere "technical provisions."  This assertion ignores their function as guarantors of procedural rights.  MCR 3.606(A) threatens punishment solely on the basis of exclusive communications between an adversarial party and the court.  The procedure authorizes the exercise of police power by judicial officers, which—contrary to the majority's

11

implication—may not be used to detain an individual without probable cause.  As an arm of the state, our actions must respect the polity's civil rights, and our court rules are drafted to ensure that the exercise of judicial authority is not arbitrary or unlawful.  To deem such rules "technical" distorts the substance of the rules and the role of the judiciary.

Although the majority holds otherwise, the exclusionary rule would be *particularly* appropriate in this instance.  As a tool to prevent the abuse of state power, this Court promulgated the court rule to mark the boundaries of acceptable judicial conduct.[4]  If the exclusionary rule applied, magistrates and judges would surely take care to

---

[4]     The majority claims that application of the exclusionary rule to MCL 780.653 or MCR 3.606(A) would not further the purpose of either because "the aim of the rule is one of police deterrence . . . ." *Ante* at 12.  While I agree that we suppress evidence in an attempt to prevent police misconduct, the exclusionary rule is also utilized to ensure compliance with the law at an *institutional* level.  The ease with which we lose sight of this goal is apparent in *People v Cartwright,* 454 Mich 550; 563 NW2d 208 (1997), where we equated "good police practice" with violations of the Fourth Amendment:

> While conceding that [the officer's] entry into the mobile home might have been good police practice, the district court held that, nonetheless, it was not a proper search without a warrant.  [*Id*. at 554.]

One wonders how it can be "good police practice" to violate the Fourth Amendment.

12

confirm that warrants were issued on a proper showing of probable cause.  Such proof is all the court rule requires.

## THE EXCLUSIONARY RULE'S UTILITY

I agree that the exclusionary rule wields significant power, but only because it is the sole efficacious method by which to protect individuals from state misconduct, as defined by our laws.  If any other method of enforcement worked so well, it, too, would be deemed disproportionate and heavy- handed.  Thus, our debate is not simply about which remedy is appropriate, but how sacred we deem the right to be free from unlawful state conduct.  Whether codified in federal or state constitutions, statutes, or court rules, the judicial branch  must enforce the laws that prescribe the scope of state power and protect individuals from the unreasonable exercise of that authority.

In the aftermath of September 11, 2001, as our nation struggles to secure its boundaries while protecting our freedoms, the role of the judiciary-charged with maintaining the delicate balance between state authority and individual liberty-becomes increasingly vital.  Our statutes and court rules have been drafted to protect these freedoms.  Because both the statute, MCL 780.653, and the court rule, MCR 3.606(A), would be without force but for the exclusionary rule, and because this Court should avoid overruling sound

13

precedent and imposing its policy upon the Legislature, I must reject the majority's analysis.

CONCLUSION

Though cloaked in a strict Textualism garb, the majority attempts to justify its decision on the basis of its own policy considerations. According to the majority, in the absence of an express legislative statement indicating an intention to invoke the exclusionary rule, the rule will not be applied. However, a more legitimate analysis would require an inference in favor of its application. In so doing, it could be guaranteed that the well-settled and authoritative interpretation of our statutes could be relied upon, and that a statute's purpose would be effectuated. Moreover, without this tool, aggrieved individuals would have no opportunity for redress. For these reasons, I would affirm the judgment of the Court of Appeals in *Hawkins*.

With regard to the proper remedy for a violation of MCR 3.606(A), I would also apply the exclusionary rule. The text of the court rule evinces an intention to impose substantive procedural safeguards into the warrant-authorization process. To effectuate this end, the exclusionary rule is required to remedy violations of MCR 3.606(A). Therefore, I would affirm the judgment of the Court of Appeals in *Scherf.*

Michael F. Cavanagh
Marilyn Kelly

14