# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

XAVIER WHITE,

        Defendant-Appellant.

UNPUBLISHED
January 13, 2015

No. 318590
Wayne Circuit Court
LC No. 13-001734-FC

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Defendant, Xavier White, appeals as of right his convictions, following a jury-trial, of armed robbery, MCL 750.529, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and carrying a concealed weapon, MCL 750.227. The trial court sentenced White to serve 6 to 15 years' imprisonment for armed robbery, two years' imprisonment for felony-firearm, and 219 days in jail for carrying a concealed weapon. We affirm.

## I. FACTS

Stephanie Bulger testified that, on February 10, 2013, she was robbed at gunpoint by two men, who took her purple purse and car keys. According to Bulger, White was one of the robbers. The police arrived less than five minutes after the robbery. Detroit Police Officer Treva Eaton testified that Bulger stated that one of the robbers wore plaid boxers and baggy pants.

According to Officer Eaton, after receiving Bulger's description, he drove around in his patrol car to look for the suspects. Officer Eaton saw White in a parking lot. White wore a dark shirt and what appeared to be red plaid boxer shorts, and he was carrying a purple purse. White fled when he saw Officer Eaton's patrol car. White discarded the purse and a gun while officers chased him. Another officer eventually apprehended White.

On February 11, 2013, Bulger went to the police station to view lineups. Detroit Police Sgt. Geraldine Young testified that another police sergeant initially used a two-by-two lineup procedure, where a total of six persons were brought out two at a time. Sgt. Young testified that Bulger did not identify anyone during the initial lineup. Attorney Gwendolyn Gordon thought that Bulger identified someone during the initial lineup, but she was not certain whether it was White. According to Sgt. Young, she stopped the two-by-two line up procedure because she

-1-

thought it was improper and she instead conducted a six-person lineup procedure. During the six-person lineup, Bulger asked that the suspects smile, say "give me your purse," and turn around. Bulger identified White after the six-person lineup procedure.

White moved to suppress Bulger's identification on the basis that the initial lineup procedure was unduly suggestive. The trial court found that the initial lineup procedure was not unduly suggestive and it denied the motion. It also found that it was not clear from Young's and Gordon's testimonies whether Bulger identified White during the initial lineup. At trial, Bulger testified that she identified White during both lineups.

## II. LINEUP PROCEDURES

White contends that the trial court's admission of Bulger's identification violated his state and federal rights to due process because the initial lineup procedure was unduly suggestive. We disagree.

This Court reviews for clear error a trial court's decision to admit identification evidence. *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. We review de novo questions of law. *People v Hawkins*, 468 Mich 488, 497; 668 NW2d 602 (2003).

The federal and Michigan constitutions provide that the state cannot deny a person "life, liberty, or property without due process of law." US Const, Am XIV; Const 1963, art 1, § 17. An identification procedure can deny a defendant due process of law if it is impermissibly suggestive. *Kurylczyk*, 443 Mich at 302; *Neil v Biggers*, 409 US 188, 196-197; 93 S Ct 375; 34 L Ed 2d 401 (1972). "In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. See *Neil*, 409 US at 196.

If a victim is shown only two photographs and believes he or she must identify one, an identification based on that procedure is unduly suggestive. *People v Hess*, 39 Mich App 28, 32; 197 NW2d 118 (1972). However, this case does not present such a scenario. In this case, officers showed Bulger a total of six men in a two-by-two format. There is no indication that Bulger was compelled to pick one person out of any given two-person lineup. To the contrary, Gordon testified that she heard Bulger say that she thought one of the men was the robber, but she was not sure and they should "keep going" with the lineup procedure. Officers subsequently showed White a lineup of all six men. There are no indications that White was the only man who appeared in both lineup procedures. While the two-ty-two person lineup procedure was unusual, in this case we are not definitely and firmly convinced that the trial court made a mistake when it found that the procedure was not unduly suggestive.

## III. ASSISTANCE OF COUNSEL

In his pro per brief filed pursuant to the Michigan Supreme Court's Administrative Order 2004-6, Standard 4, White contends that his Sixth Amendment right to counsel was violated when Gordon, rather than his retained attorney, was present during the lineups. We disagree.

A defendant's right to counsel "attaches only to corporeal identification conducted at or after the initiation of adversarial judicial proceedings." *People v Hickman*, 470 Mich 602, 607; 684 NW2d 267 (2004). See *Moore v Illinois*, 434 US 220, 226-227; 98 S Ct 458; 54 L Ed 2d 424 (1977). The initiation of adversarial judicial proceedings includes the issuance of formal charges, an indictment, information, arraignment, or preliminary hearing. *Hickman*, 470 Mich at 607; *Moore*, 434 US at 226. In this case, White's corporeal lineup took place after he was arrested, but before he was charged, indicted, arraigned, or had a preliminary hearing. Thus, White's lineup occurred before the initiation of adversarial judicial proceedings. Because White was not entitled to any counsel at his identification proceeding, we reject his claim that he was entitled to counsel of his choice.

White also contends that Gordon rendered ineffective assistance by not challenging the lineup procedures. We disagree.

Where the defendant has no constitutional right to counsel, the defendant cannot maintain an ineffective assistance of counsel claim. *People v Walters*, 463 Mich 717, 720-721; 624 NW2d 922 (2001); *Coleman v Thompson*, 501 US 722, 752; 111 S Ct 2546; 115 L Ed 2d 640 (1991). As discussed above, White did not have the right to counsel at the identification proceeding. Accordingly, White cannot maintain a claim that counsel who was present provided him with ineffective assistance.

## IV. PROSECUTORIAL MISCONDUCT

In his pro per brief, White contends that the prosecutor engaged in misconduct when he allowed Bulger to present false testimony. We disagree.

This Court will not reverse a conviction on the basis of prosecutorial misconduct unless the defendant specifically challenges the alleged misconduct before the trial court or a failure to review the issue would result in the miscarriage of justice. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). We review unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). See *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). The prosecutor violates a defendant's right to due process when he or she knowingly uses false testimony to obtain a conviction, or fails to correct false evidence or perjured testimony. *People v Wiese*, 425 Mich 448, 455; 389 NW2d 866 (1982); *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001).

The record does not support White's assertion that the prosecutor allowed Bulger to present false testimony or add details to her description of the assailant. There is no indication that the additional or different details about which Bulger testified at trial were false evidence or perjured testimony. Bulger's new or different recollection of the details of the robbery may have

provided grounds for impeachment, but that does not alone render her testimony false. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998); *Herndon*, 246 Mich App at 417. We conclude that White has not shown that the prosecutor's admission and use of Bulger's testimony constituted prosecutorial misconduct.

To the extent that White contends that the prosecutor committed misconduct by arguing that White was the robber on allegedly insufficient evidence, we reject this argument. The prosecutor may argue all the facts in evidence and all reasonable inferences arising from the evidence as related to the prosecutor's theory of the case. *Bahoda*, 448 Mich at 282; *Unger*, 278 Mich App at 236. It is defense counsel's responsibility to argue the defendant's theory of the case, not the prosecutor's. In this case, the prosecutor argued from the evidence that White was the robber on the basis of the evidence and inferences available at trial. We conclude that the prosecutor did not commit misconduct by doing so.

We affirm.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell