PEOPLE v DAGWAN

Docket No. 262921. Submitted December 7, 2005, at Grand Rapids.
Decided December 22, 2005, at 9:00 a.m. Leave to appeal sought.

Michael A. Dagwan was charged with three counts of possessing
child sexually abusive material. The Mackinac Circuit Court,
Charles H. Stark, J., granted the defendant's motion to suppress
evidence of stored images found in his laptop computer, essen-
tially concluding that the reference to "containers" in the form
the defendant signed consenting to a search of his automobile
did not include the laptop the police found in the automobile.
The prosecution appealed by leave granted.

The Court of Appeals *held*:

The trial court erred by suppressing the evidence obtained in
the search of the defendant's automobile. Voluntary consent that
is unequivocal, specific, and freely and intelligently given is a
recognized exception to the warrant requirement for searches and
seizures. The defendant freely and voluntarily consented in writ-
ing to a complete search of his automobile, including all the
containers within it. The constitutional standard for determining
the scope of a consent to search is that of objective reasonableness:
what the typical reasonable person would understand by the
exchange between the police and the suspect concerning consent.
It was objectively reasonable for the police to believe that the
defendant's consent included consent to examining data stored
within the laptop. The search had the broad object of looking for
anything illegal, including stolen property. A reasonable person
would know that a computer can contain illegal child sexually
abusive material in the form of stored electronic images. The
defendant's consent was broad and all encompassing. The plain
and unambiguous meaning of "container" includes a computer,
which can store data in its memory and thus act as a container.
The defendant never restricted, revoked, or in any way limited his
consent to search, even after the police asked him about the laptop
when they found it.

Reversed and remanded for further proceedings.

Searches and Seizures — Scope of Consent to Search — Container Searches.

> The constitutional standard for determining the scope of a consent to search is that of objective reasonableness: what a typical reasonable person would understand by the exchange between the police and the suspect that led to the consent; it is objectively reasonable to conclude that a consent to search all the containers in an automobile, for example, is broad enough to include consent to examine the data electronically stored within a computer found in the automobile.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *W. Clayton Graham*, Prosecuting Attorney, and *Alfred Feleppa*, Assistant Prosecuting Attorney, for the people.

*Trenton M. Stupak* for the defendant.

Before: Whitbeck, C.J., and Bandstra and Markey, JJ.

Markey, J. Plaintiff appeals by leave granted the trial court's order granting defendant's motion to suppress evidence. The issue presented on appeal is the scope of the consent defendant granted the Michigan State Police to "conduct a complete search of the motor vehicle owned by me and/or under my care, custody, and control, including the interior, trunk, engine compartment, and all containers therein[.]" The trial court suppressed alleged child sexually abusive material the police found electronically stored on a laptop computer located inside the car, essentially reasoning that even in "a search supported by consent," there must be probable cause that the item that "is being looked for will be found in a specific place." We reverse.

Defendant entered the Michigan State Police post in St. Ignace and asked Sergeant Amy Pendergraff how he could transfer his Michigan sex offender registration to

Massachusetts. Pendergraff contacted Trooper Elaine Bitner at the State Police post in Sault Ste. Marie. Trooper Bitner told Sergeant Pendergraff that defendant was being investigated for a possible sex offender registry violation, see MCL 28.729. Trooper Bitner asked Sergeant Pendergraff to detain defendant, so she searched defendant for weapons, then placed him in a holding cell. Soon thereafter, Trooper Bitner told Sergeant Pendergraff that the Chippewa County prosecutor had authorized a complaint for an arrest warrant charging defendant with a sex offender registry violation and asked her to arrest defendant on the basis of this probable cause.

Sergeant Pendergraff testified that she advised defendant he was under arrest. Defendant then consented to a search of his car. Sergeant Pendergraff stated that when she asked defendant if he was freely giving consent and if he would sign a written consent form, he said yes. Specifically, Sergeant Pendergraff testified: "He said yes. I got the form, filled it out. He read it over. He signed it." The pertinent part of the consent form is quoted above. Defendant initialed the form to the left of the paragraph describing the scope of the search and signed it at the bottom. Sergeant Pendergraff testified that she was searching for illegal items, including stolen property.

Trooper Marie Nelson testified that she and Sergeant Pendergraff went to the holding cell, and she asked defendant if he had anything in the vehicle that he should not have. Defendant answered no and told the troopers to "take a look." Trooper Nelson told defendant that she was going to do an inventory search of his vehicle after he gave them consent to search it. According to Trooper Nelson, she did not hear defendant say anything to revoke his consent to search the entire vehicle.

Sergeant Pendergraff further testified that she took defendant outside, and he unlocked his car for her. Sergeant Pendergraff found a laptop and some other equipment in the car. She asked defendant about the laptop because he had indicated earlier that he was living in his car. She explained that in her experience, people who live in their cars usually do not own laptops. None of the items removed from defendant's car was listed as stolen in police records. Sergeant Pendergraff also testified that defendant never revoked or restricted his consent to search, but she acknowledged that she did not specifically ask him whether she could start and look at the contents of the computer. Sergeant Pendergraff gave the computer to Detective Sergeant Robin Sexton to examine.

Detective Sexton, who had special training in computer data recovery, ran a cursory image search using a compact disc containing a computer software program designed for that purpose. Detective Sexton found what appeared to be child pornography. Detective Sexton explained that he then "turned the computer down and submitted for a search warrant."

Defendant was charged with three counts of possession of child sexually abusive material. MCL 750.145c(4). Defendant waived preliminary examination and moved in the circuit court to suppress the images found on his computer. The trial court granted the motion, concluding, in essence, that "containers," as referred to in the consent form, did not include "the inner workings of the computer." This Court then granted the prosecution's application for leave to appeal.

We review de novo the trial court's ultimate decision to suppress evidence on the basis of an alleged constitutional violation. *People v Frohriep*, 247 Mich App 692,

702; 637 NW2d 562 (2001). But we review the trial court's findings of fact for clear error, deferring to the trial court's special opportunity to determine the credibility of witnesses appearing before it. *Id.*; MCR 2.613(C). We will only determine that a finding of fact is clearly erroneous if, after reviewing the entire record, we are left with a definite and firm conviction that a mistake has been made. *Frohriep, supra* at 702.

Both the United States Constitution and the Michigan Constitution guarantee to the people the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The touchstone of these protections is reasonableness; not all searches are constitutionally prohibited, only unreasonable searches. *Florida v Jimeno,* 500 US 248, 250; 111 S Ct 1801; 114 L Ed 2d 297 (1991); *People v Shields,* 200 Mich App 554, 557; 504 NW2d 711 (1993). Ordinarily, searches or seizures conducted without a warrant are unreasonable per se. *People v Borchard-Ruhland,* 460 Mich 278, 293-294; 597 NW2d 1 (1999). And, generally, when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial. *People v Wilkens,* 267 Mich App 728, 732; 705 NW2d 728 (2005).

There are, however, a number of recognized exceptions to the warrant requirement, including voluntary consent. *Borchard-Ruhland, supra* at 294; *Frohriep, supra* at 702. To validate an otherwise unreasonable search or seizure, the consent must be unequivocal, specific, and freely and intelligently given. *Frohriep, supra* at 702. On a motion to suppress, it is a question of fact for the trial court to determine on the basis of an assessment of the totality of the circumstances whether a person has freely and voluntarily consented to a search. *Schneckloth v Bustamonte,* 412 US 218, 248-

249; 93 S Ct 2041; 36 L Ed 2d 854 (1973); *Borchard-Ruhland, supra* at 294. Here, defendant does not dispute that he freely and voluntarily consented to a search of his car, "including the interior, trunk, engine compartment, and all containers therein[.]" Defendant only asserts that the scope of his consent did not include reviewing data stored in the memory of the laptop located inside his car. No Michigan appellate court has previously addressed this precise question.

To decide this issue, we begin by reviewing the basic principles governing the scope of searches authorized by consent. First, the party granting consent to a search may limit its scope or may revoke consent after granting it. *Frohriep, supra* at 703; *People v Powell,* 199 Mich App 492, 496-499; 502 NW2d 353 (1993). Thus, because consent flows from its grantor, "[a] suspect may of course delimit as he chooses the scope of the search to which he consents." *Jimeno, supra* at 252. Second, the constitutional standard for determining the scope of a consent to search "is that of 'objective reasonableness' —what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251. The *Jimeno* Court also observed, "The scope of a search is generally defined by its expressed object." *Id.*

In *Jimeno,* the suspect granted the police general consent to search his car after the police told him they suspected it might contain narcotics. The police found narcotics in a paper bag on the floor of the car. *Id.* at 249-250. The *Jimeno* Court held that "it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs." *Id.* at 251. This is because "[a] reasonable

person may be expected to know that narcotics are generally carried in some form of a container." *Id*. Thus, applying the objective standard of reasonableness, the scope of the consent to search in *Jimeno* "extended . . . to the paper bag lying on the car's floor." *Id*. "The Fourth Amendment [was] satisfied when, under the circumstances, it [was] objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open [the] container within the automobile." *Id*. at 249.

Applying these principles to the instant case, we conclude that it was objectively reasonable for the police to believe that defendant's consent included consent to examining data stored within the laptop found in defendant's car. First, the object of the police search was broad: to look for anything illegal, including stolen property. We conclude that a reasonable person would know that computers may be used to commit crimes. See MCL 750.145d. Further, we conclude that a reasonable person would know that computers can contain illegal child sexually abusive material in the form of stored electronic images. MCL 750.145c(1)(m). Second, the written consent to search that defendant signed was broad and all encompassing. Defendant agreed to permit the police to "conduct a complete search of [his] motor vehicle . . . , including the interior, trunk, engine compartment, and all containers therein[.]"

The wording of the written consent is plain and unambiguous, so the police were objectively reasonable in believing that defendant consented to their examining data stored on the laptop. See *Mancik v Racing Comm'r*, 236 Mich App 423, 428; 600 NW2d 423 (1999). "Complete" is defined as "having all parts or elements; lacking nothing; whole; entire; full; . . . thorough; total; undivided, uncompromised, or unqualified[.]" *Random*

*House Webster's College Dictionary* (1992). A "container" is "anything that contains or can contain something . . . ." *Id.* In other words, the plain and unambiguous words in the written consent that defendant signed authorized a complete or total search of anything within the car, including anything within the car that could contain something illegal. Because a computer can store data in its memory, and thus act as a container, here of illegal child sexually abusive material, it was objectively reasonable for the police to believe that the scope of defendant's consent permitted them to examine the contents of the computer found inside the automobile. *Jimeno, supra* at 249. Consequently, we conclude that a reasonable person would have understood that defendant's consent was broad enough to encompass a review of the computer's stored data. *Id.* at 251; *Mancik, supra* at 430.

We are also impressed by the fact that at the suppression hearing, there was no evidence presented that defendant ever restricted or revoked the broad general consent he granted for "a complete search of [his] motor vehicle . . . and all containers therein[.]" This complete dearth of evidence is particularly important in this case because defendant knew that the police had found the computer. In fact, they had specifically asked him about it. Still, defendant never revoked, restricted, or limited in any way either his consent to search or the officers' access to the computer. This fact alone distinguishes the present case from the case on which defendant relies, *State v Wells*, 539 So 2d 464, 468 (Fla, 1989), in which the Florida Supreme Court held that "general consent to look in an automobile trunk . . . did not constitute permission to pry open a locked piece of luggage found inside ." See *Jimeno, supra* at 251.

In conclusion, we hold that it was objectively reasonable for the police to conclude that defendant consented to their review of the data stored in the laptop found within his automobile. We therefore reverse the trial court's order suppressing the evidence obtained by the search.

We reverse and remand for further proceedings. We do not retain jurisdiction.