*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANTE ERIC WELLS,

Defendant-Appellant.

UNPUBLISHED
April 18, 2024

No. 362057
Ottawa Circuit Court
LC No. 20-044111-FC

Before: CAVANAGH, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of possession of methamphetamine, MCL 333.7403(2)(b)(*i*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 46 to 120 months' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

This case stems from an unscheduled parole compliance check involving the search of defendant's house and car. The compliance check was conducted by several law enforcement officers. Upon arrival at defendant's house, the officers administratively detained defendant in handcuffs and conducted the search. The search of defendant's bedroom yielded a plastic bag with sugar remnants from a marijuana edible; pills; a digital scale; and a board with names and numbers on it, which the officers believed was a drug ledger. The search of defendant's car yielded approximately $1,500 in cash and a lock box containing a clear plastic bag, a crystalline substance, a digital scale, a box of sandwich bags, and a lighter. The substance in the lock box field tested positive for methamphetamine, and this was later confirmed by lab test. Defendant was charged with possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*).

At trial, a recording of defendant's interview with law enforcement on the night of the compliance check was played for the jury. The interview focused on the lock box, the purported drug ledger, and the cash located in defendant's car. Defendant listed several names of potential owners of the lock box, including Gilberto Silvas, who ultimately testified at trial that he owned the lock box. Defendant stated that he owned a cheesecake business and explained that the names and numbers on the board in his room were not a drug ledger, but instead related to the business.

-1-

Defendant further explained that the cash found in his car was from a lump-sum payment that he received for unemployment. Defense counsel's theory of the case was that the lock box belonged to someone else and that defendant was unaware that methamphetamine was inside. The prosecution sought to use the items to establish that he possessed methamphetamine with an intent to deliver it. Ultimately, the prosecution requested a jury instruction on possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and the jury found defendant guilty on that charge, but not guilty on the principal charge of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*).

The trial court sentenced defendant to 46 to 120 months' imprisonment, stating:

> So, at the trial, we heard a lot about—the Court was concerned about the number of dollars you have on you, the amount of money that you had on you at the time of the check. And, also, the other things that were in your possession, or in your vehicle, including the scales, and the baggies, and the baggies' location being in the safe. If baggies are going to be used for a purpose of baking or cooking, they're not going to be locked up in a safe. And, the fact that there's also a scale in the safe says volumes about what those baggies were going to be used for, and that shows an intent to distribute. And, the Court recalls the testimony of Sergeant DeYoung that often times, people that are dealing have either a lot of drugs, or otherwise, they have a lot of cash. You had a lot of cash on you at that time. But the jury convicted you of possession of methamphetamine, and that is what you will be sentenced on.

> \* \* \*

> So, it is the sentence of the Court that you pay a state cost fee, a crime victim assessment fee, and you are sentenced to the Michigan Department of Corrections for a period of not less that [sic] 46 months, and not more than 120 months.

The trial court recognized that the sentence that it imposed was at the high end of defendant's minimum sentencing guidelines range, but reasoned that the sentence was appropriate on the basis of defendant's criminal record and "the details of what occurred" in the case.

After sentencing, defendant moved for a new trial, an evidentiary hearing, and to correct an invalid sentence. He argued that defense counsel was ineffective for (1) failing to move to suppress his statements to law enforcement during the interview despite the fact that he was under the influence of drugs and his waiver of his *Miranda*[1] rights was, therefore, not knowing, intelligent, or voluntary; and (2) by stipulating to the admission of his parole status. He further argued that his sentence should be corrected because he was erroneously sentenced on the basis of acquitted conduct. The trial court granted an evidentiary hearing on the assistance-of-counsel issue, ultimately holding that defense counsel's performance was not constitutionally deficient. It denied defendant's request to correct an invalid sentence, noting that his sentence did not deviate

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

from the minimum sentencing guidelines range and that the trial court did not use acquitted conduct in sentencing him.

After filing his appeal, defendant moved to remand in this Court, arguing the same ineffective-assistance-of-counsel claims and asserting a third claim that defense counsel was ineffective for failing to move to suppress the evidence seized during the search. This Court denied defendant's motion for failure to persuade the Court of the necessity of a remand.[2] We now address defendant's appeal as of right.

## II. ANALYSIS

### A. WARRANTLESS SEARCH

Defendant first argues that the unannounced parole compliance check constituted a warrantless search and that the evidence discovered during the search should have been suppressed. We disagree.

Defendant did not raise the issue of the constitutionality of the compliance check at any time in the trial court below. Therefore, this issue is not preserved for appellate review. See *People v Vaughn*, 344 Mich App 539, 549; 1 NW3d 414 (2022) ("In order to properly preserve an issue for appeal, a party must raise objections at a time when the trial court has an opportunity to correct the error."). When an issue alleging constitutional error is not preserved, we review the issue "for plain error affecting a defendant's substantial rights." *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). A plain error affects substantial rights when "the error prejudiced the defendant," *id.* at 79, "i.e., that the error affected the outcome of the lower court proceedings," *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Both the United States and Michigan Constitutions protect against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "[A] search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439 (2011) (quotation marks and citation omitted). "[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v Knights*, 534 US 112, 118-119; 122 S Ct 587; 151 L Ed 2d 497 (2001). "[G]enerally, when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005).

"As a general rule, searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the search falls under one of the established exceptions to the warrant requirement." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). Relevant to

---

[2] *People v Wells*, unpublished order of the Court of Appeals, entered October 19, 2023 (Docket No. 362057).

this case, MCL 791.236(19) provides an exception to the warrant requirement for parolees, who must provide consent to submit to warrantless searches as a condition of parole:

> *The parole order must require the parolee to provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer . . . .* The prisoner shall sign the written consent before being released on parole. The department shall promptly enter this condition of parole into the department's corrections management information system or offender management network information system or into a corresponding records management system that is accessible through the law enforcement information network. Consent to a search as provided under this subsection does not authorize a search that is conducted with the sole intent to intimidate or harass. [Emphasis added.]

Defendant acknowledges that the constitutionality of requiring agreement to such a provision as a condition of parole has been upheld by the United States Supreme Court, which held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson v California*, 547 US 843, 852, 857; 126 S Ct 2193; 165 L Ed 2d 250 (2006). Defendant further acknowledges that he signed a parole order that included a condition consistent with MCL 791.236(19). Nevertheless, he contends that under *Samson*, the parolee search clause must be explained to the parolee in order to limit his expectation of privacy. In support, defendant points to the *Samson* Court's recognition that in *Knights*, 534 US at 119, the Court found it significant that an order of probation "clearly expressed the search condition and [the defendant] was unambiguously informed of it." See *Samson*, 547 US at 849, 852.

Defendant argues that he was not advised of the conditions of his parole and claims that a remand is required. In making this argument, defendant overlooks a key point from *Samson*. Specifically, the *Samson* Court noted that the defendant "signed an order submitting to the condition and thus was 'unambiguously' aware of it." *Id*. at 852, quoting *Knights*, 534 US at 119. "[A]cceptance of a clear and unambiguous search condition 'significantly diminished [the defendant's] reasonable expectation of privacy.' " *Samson*, 547 US at 852, quoting *Knights*, 534 US at 120. Again, defendant acknowledges that he signed a parole order that included a condition consistent with MCL 791.236(19). Under *Samson*, then, he was unambiguously aware of it. No further explanation of the plain terms of the parole search condition was required.

Defendant also asserts that this Court should independently consider the constitutionality of the search under the Michigan Constitution. Defendant relies on a Michigan Supreme Court concurrence stating that "[a]t least for purposes of Michigan law, it remains unsettled what privacy interests a parolee retains and whether a parole search is . . . lawful when it is not 'directly and closely related' to the administration of the parole supervision system." *People v Montgomery*, 508 Mich 978, 979 (2021) (WELCH, J., concurring),[3] citing *People v Woods*, 211 Mich App 314, 318 n 2; 535 NW2d 259 (1995) (stating that "there is no clear rule in this area," referring to warrantless parole searches). Along with the citation to *Montgomery*, defendant points out that

---

[3] Justice CAVANAGH joined with Justice WELCH's concurrence.

this Court has identified certain factors to consider when determining whether our Michigan Constitution should be interpreted differently than the federal constitution, including:

> 1) the textual language of the state constitution, 2) significant textual differences between parallel provisions of the two constitutions, 3) state constitutional and common-law history, 4) state law preexisting adoption of the relevant constitutional provision, 5) structural differences between the state and federal constitutions, and 6) matters of peculiar state or local interest. [*People v Tanner*, 496 Mich 199, 223 n 17; 853 NW2d 653 (2014) (quotation marks and citation omitted.)]

Concurring opinions are not binding on this Court, and may only be considered for their persuasive value. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 411 n 5; 952 NW2d 586 (2020). Thus, we are unpersuaded by defendant's claim. As for the rest of his argument, defendant merely lists the *Tanner* criteria without advancing an original argument as to why the Michigan Constitution should be interpreted differently than the federal constitution with regard to warrantless parole searches. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (quotation marks and citations omitted; alteration in original). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *Id*.

Moreover, to the extent that defendant does attempt to support his argument with citations to caselaw, we find said caselaw inapt. Defendant cites *People v Carr*, 370 Mich 251; 121 NW2d 449 (1963), for the proposition that an individual maintains some privacy rights, even if incarcerated. The present case is clearly distinguishable, as it involves a parolee, not an incarcerated individual. See *People v Peterson*, 62 Mich App 258, 271; 233 NW2d 250 (1975) (DANHOF, J., dissenting) (distinguishing *Carr* because parolees are given a choice, while prisoners are not, and noting that "[a] probationer or parolee has given his consent [to search] in return for more lenient treatment").

Defendant also cites this Court's decisions in *Peterson*, 62 Mich App at 254-267 (opinion of the Court) (holding, in part, that a "blanket search and seizure" provision in an order of probation was unconstitutional), *People v Richards*, 76 Mich App 695, 698-699; 256 NW2d 793 (1977) (rejecting the *Peterson* majority and holding that there is no constitutional barrier to the inclusion of a search-and-seizure waiver in an order of probation), and *People v Hellenthal*, 186 Mich App 484, 486; 465 NW2d 329 (1990) (declining to follow *Peterson*, and holding that "a waiver of one's constitutional protections against unreasonable searches and seizures may properly be made a condition of a probation order where the waiver is reasonably tailored to a defendant's rehabilitation"). However, each of those cases were issued before November 1990, and thus are not binding on this Court. MCR 7.215(J)(1). Although all three decisions are "considered to be precedent and entitled to significantly greater deference than are unpublished cases," *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019) (quotation marks and citation omitted), the more relevant case, decided after 1990 and which addressed each of those preceding cases, is *Bensch*. In *Bensch*, 328 Mich App at 13, this Court reaffirmed *Peterson*'s conclusion that a "defendant may decline a sentence of probation and instead seek a sentence of incarceration." And

although the core issue in that case was the probationer's ability to choose incarceration over probation, the *Bensch* Court reaffirmed that "the warrantless-search condition of probation was constitutional because the defendant—by accepting probation—agreed to waive the constitutional right to be free from unreasonable searches and seizures." *Id*. at 8.

Defendant has not supported his argument that a parolee's privacy rights should be decided differently under the Michigan Constitution, or that plain error resulted from the court's failure to suppress the evidence found during the parole search. Defendant is therefore not entitled to relief.

## B. INEFFECTIVE ASSISTANCE

Defendant next argues that defense counsel provided ineffective assistance. In all respects, we disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews a trial court's factual findings for clear error and reviews de novo questions of constitutional law." *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008).

To obtain relief on the basis of ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks and citation omitted; alteration in original). A "defendant bears a heavy burden" to prove that counsel was ineffective. *Id*. (quotation marks and citation omitted).

Defendant first argues that counsel was ineffective for failing to move to suppress defendant's statements during his interview with law enforcement. Defendant claims that he was under the influence of drugs and that the waiver of his *Miranda*[4] rights was thus not knowing, intelligent, or voluntary. "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). "Intoxication from alcohol or other substances can affect the validity of a waiver, but is not dispositive." *Id*. at 265. Further, "whether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion." *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000).

At defendant's evidentiary hearing, he testified that on the day of the interview, he had been awake for three days, smoked marijuana, and ingested five or six Adderall[5] pills. Defendant further testified that he was distracted and unable to focus on what the officers were saying during the interview. Defendant recalled being read his *Miranda* rights, but testified that at the time, he

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[5] Adderall is commonly used to treat attention deficit hyperactivity disorder, but is frequently misused as a recreational stimulant. WebMD, *Adderall Abuse and Addiction* < https://www.webmd.com/mental-health/addiction/adderall-abuse-addiction-signs> (accessed March 20, 2024).

did not understand what they meant. Defendant also testified that he did not fully remember being questioned by law enforcement. Defendant stated that he felt as though the officers were pressuring him.

Defendant's testimony makes clear that he was under the influence of drugs at the time of the interview. However, even if defendant's statements could have been suppressed on this basis, defendant has failed to overcome the "strong presumption that counsel's performance constituted sound trial strategy." *Riley*, 468 Mich at 140. At the evidentiary hearing, defense counsel testified that he did not move to suppress defendant's statements because (1) much of the conversation was about defendant's efforts to start a cheesecake business, including defendant's explanation that the alleged drug ledger in his bedroom was related to that business; and (2) during the interview, defendant identified Silvas as the owner of the lock box, and Silvas ultimately testified about his ownership of the lock box. Allowing the admission of these statements was the only avenue defense counsel could have taken to credibly introduce its theory that defendant was not guilty of possessing methamphetamine with intent to deliver. Had defense counsel presented this theory at trial through defendant's testimony, it would not have been as credible because defendant would have had several months to fabricate a reason for the board and the prosecution would have been given the opportunity to attack the theory on that basis. Therefore, allowing the admission of defendant's statements for this purpose appears to have been a sound trial strategy. Additionally, defendant's statement that Silvas owned the lock box corroborated Silvas's testimony, which likely already appeared suspect to the jury because Silvas incriminated himself during his testimony. Therefore, this also appears to constitute sound trial strategy. Accordingly, defendant's argument on this issue fails.

Defendant next argues that defense counsel was ineffective for stipulating to the admission of defendant's parole status. Defendant contends that evidence of his parole status was inadmissible under MRE 404(b), which prohibits evidence of a defendant's prior bad acts to prove a defendant's character or propensity to commit the charged crime. In this case, however, defendant's parole status was not admitted to establish defendant's character or propensity to commit the crime charged. Rather, defense counsel testified at the evidentiary hearing that defendant's parole status was admitted to inform the jury that law enforcement was conducting the search at random and to allow for testimony from defendant's parole agent.

The record reflects that it was not a decision defense counsel took lightly. In fact, defense counsel ensured that the stipulation was placed on the record even though the conversation took place off the record initially because he recognized that defendant's parole status was "very relevant to both parties." The record thus reflects that defense counsel's decision to stipulate to the admission of defendant's parole status was a strategic decision. Further, as a result of the stipulation, defendant's parole agent was able to testify about his relationship with defendant and the legitimate nature of defendant's cheesecake business. Defense counsel also indicated that he genuinely believed that the search was random and that it would benefit defendant for the jury to be made aware of that, as opposed to giving the jury an opportunity to wonder what defendant did to draw the attention of law enforcement. Overall, it appears that defense counsel made a sound, strategic decision by stipulating to the admission of information regarding defendant's parole status. Therefore, defendant has failed to show that defense counsel's performance was unreasonable.

Defendant lastly argues that defense counsel was ineffective for failing to move to suppress the evidence seized during the search of his house and car. At the evidentiary hearing, defense counsel testified that he believed defendant had a diminished expectation of privacy because he was on parole and that the search was randomly conducted as a result of defendant's parole status. Defense counsel's stated beliefs about this matter are consistent with established precedent under both the United States and Michigan Constitutions, as explained in Issue II, *supra*. Therefore, defendant has again failed to show that defense counsel's performance was unreasonable.

In sum, defendant has failed to establish the factual predicate for his ineffective-assistance-of-counsel claims. He is therefore not entitled to a new trial.

## C. RESENTENCING

Defendant finally argues that the trial court erred by relying on acquitted conduct when imposing his sentence and that, therefore, he is entitled to resentencing. We disagree.

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (quotation marks and citation omitted); see also MCL 769.34(10); MCR 6.429(C). Defendant moved to correct the purported invalid sentence in the trial court. Therefore, this issue is preserved for appellate review. This Court reviews "constitutional claims under a de novo standard." *People v Brown*, 339 Mich App 411, 419; 984 NW2d 486 (2021). Further, "[i]f the claim involves factual findings by the trial court, then we review those findings under a clear-error standard." *Id*.

Although the "sentencing guidelines are advisory in all applications," *People v Posey*, 512 Mich 317, 325; 1 NW3d 101 (2023), "[a] defendant is entitled to be sentenced by a trial court on the basis of accurate information," *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). The Supreme Court has held that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019). Acquitted conduct is conduct that "has been formally charged and specifically adjudicated by a jury." *Id*. at 620. Such conduct "is protected by the presumption of innocence" and "may not be evaluated using the preponderance-of-the-evidence standard without violating due process." *Id*. at 627. The Supreme Court has stated that "[t]o allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." *Id*. at 626-627 (quotation marks and citation omitted). Therefore, if a sentencing court punishes a defendant more severely on the basis of acquitted conduct, that defendant is entitled to resentencing. *Id*. at 629-630.

Here, defendant was originally charged with possession of methamphetamine with intent to deliver. To convict defendant of this charge, the prosecution had to prove that defendant knowingly or intentionally possessed methamphetamine, see *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017), and intended to deliver it to someone else, see *People v Robar*, 321 Mich App 106, 115; 910 NW2d 328 (2017). The contested element of the charge was defendant's intent to deliver. Much of the trial focused on the items seized from defendant's house and car

that, in the testifying officers' minds, indicated that defendant had an intent to deliver the methamphetamine. These items included the board with names and numbers found in defendant's room, which the officers referred to as a drug ledger; the digital scale; plastic baggies; and cash. The jury ultimately rejected this charge, and instead convicted defendant of the lesser charge of possession of methamphetamine.

During defendant's sentencing hearing, the trial court stated:

> So, at the trial, we heard a lot about—the Court was concerned about the number of dollars you have on you, the amount of money that you had on you at the time of the check. And, also, the other things that were in your possession, or in your vehicle, including the scales, and the baggies, and the baggies' location being in the safe. If baggies are going to be used for a purpose of baking or cooking, they're not going to be locked up in a safe. And, the fact that there's also a scale in the safe says volumes about what those baggies were going to be used for, and that shows an intent to distribute. And, the Court recalls the testimony of Sergeant DeYoung that often times, people that are dealing have either a lot of drugs, or otherwise, they have a lot of cash. You had a lot of cash on you at that time. *But the jury convicted you of possession of methamphetamine, and that is what you will be sentenced on.* [Emphasis added.]

Defendant can only prove he is entitled to resentencing if the trial court actually considered the acquitted conduct during sentencing. Here, there is no evidence that the court actually did so. The trial court listed each item that the prosecution put before the jury during trial in an attempt to prove defendant's intent to deliver methamphetamine beyond a reasonable doubt. However, the trial court also noted that the jury convicted defendant only of possession of methamphetamine, and not the element of intent to deliver. It explicitly stated that the possession conviction was the *sole* conviction for which defendant would be sentenced, regardless of the other evidence presented by the prosecution. On this record, defendant has not established that he was sentenced for acquitted conduct. He is therefore not entitled to resentencing.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick