*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SEAN ALLEN CONLEY,

Defendant-Appellant.

UNPUBLISHED
February 09, 2026
9:20 AM

No. 375466
Allegan Circuit Court
LC No. 2025-027123-FH

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

The prosecution charged defendant with one count of possession of a controlled substance, MCL 333.7403(2)(b)(*i*), after an officer found a glass tube containing methamphetamine in defendant's vehicle following a search. Before trial, defendant moved to suppress the glass tube and any evidence related to it, and the trial court denied the motion in an order. From that order, defendant appeals by leave granted.[1] We vacate and remand for further proceedings.

## I. BACKGROUND

This case arises from a search of defendant's vehicle after he was stopped by Allegan City Police Department Officer Zachery Dykema. Defendant claims that Dykema's bodycam recorded the entirety of the at-issue search, but that recording was not reviewed by the trial court, and it has not been provided to this Court on appeal. Nevertheless, in his motion to suppress, defendant recounted what Dykema's bodycam supposedly showed, and the prosecution in the trial court "largely adopt[ed] the statement of facts by the defendant." Therefore, for purposes of this appeal, we accept as true the statement of facts in defendant's motion to suppress.

Dykema stopped defendant at 11:23 p.m. on September 5, 2024, because defendant's vehicle had an expired plate. During the stop, Dykema asked defendant if he had any weapons,

---

[1] *People v Conley*, unpublished order of the Court of Appeals, entered August 19, 2025 (Docket No. 375466).

and after defendant said no, Dykema asked if he could "check just to make sure there's no weapons or anything like that." Defendant replied in the affirmative. During the ensuing search, Dykema opened the center console and "shuffle[d] items around with his hand," then picked up a clear glass tube. Dykema examined the tube, "noticing a speckled pattern on the tube," then set the tube down on the passenger seat. After searching several other areas, Dykema reexamined the glass tube, "rotating it in his fingers and hitting it against the passenger seat, attempting to knock some material loose." Dykema then asked defendant "what the powder dusting" inside the tube was, and defendant said that he did not know. Dykema proceeded to search the rest of defendant's vehicle but found nothing of evidentiary value. Following this search, Dykema told defendant that he was going to send the glass tube "to the state lab and if it comes back positive [defendant] will have a warrant out for his arrest." Dykema let defendant go "with a citation," then took the glass tube and field tested it, which gave "a presumptive match for Methamphetamine."

After defendant was charged, he moved to suppress any evidence related to the glass tube and its contents. Defendant argued that suppression was necessary because Dykema exceeded the scope of defendant's consent to search his vehicles for weapons when Dykema searched and seized the glass tube. Defendant additionally argued that the search and seizure of the glass tube was not justified by the plain-view exception to the warrant requirement because the criminal nature of the glass tube was not obvious and apparent, as evidenced by the fact that Dykema needed to spend time investigating the glass tube to determine its possibly-criminal nature.

In answer, the prosecution adopted defendant's statement of facts with the caveat that, based on Dykema's training and experience, the incriminating nature of the glass tube was immediately apparent to Dykema. That Dykema immediately recognized the incriminating nature of the glass tube was supported by the facts, argued the prosecution, as the glass tube was the only item that Dykema singled out and asked defendant questions about. Because, according to the prosecution, the incriminating nature of the glass tube was immediately apparent to Dykema, his search and seizure of the tube was justified under the plain view-exception.

At the hearing on defendant's motion, the trial court asked the prosecution if Dykema was available to testify, and the prosecution said that it would need an adjournment if the court wanted to hear from Dykema. In response, the court said, "I mean you stipulated essentially to the facts," to which the prosecutor said, "Yeah." The court then told the prosecutor, "If you want to proceed to argument we can certainly," and the prosecution, in line with its briefing, argued that the incriminating nature of the glass tube was immediately apparent to Dykema based on his training and experience "in drug enforcement, recognition," so his search and seizure of the tube did not violate defendant's rights.

After listening to argument, the court denied defendant's motion to suppress in a ruling from the bench. The court reasoned that Dykema's search of the center console was permitted in light of defendant's consent to search the vehicle for weapons because the center console was "where one would anticipate finding weapons if they were to be had in a vehicle." The court further reasoned that, after gaining access to the center console, it was permissible for Dykema to search and seize the glass tube under either the plain-view or plain-feel exception to the warrant requirement because, based on Dykema's "training and experience," the incriminating nature of the tube was immediately apparent to him.

-2-

This appeal followed.

## II. STANDARD OF REVIEW

A motion to suppress is reviewed in two ways. The trial court's factual findings in support of the motion are reviewed for clear error, while the trial court's determination about whether a defendant's rights were violated under the facts as found by the court is reviewed de novo. See *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016).

## III. ANALYSIS

Both the United States and Michigan Constitution protect the people against unreasonable searches and seizures. US Const Am IV; Const 1963, art 1, § 11. The touchstone of this protection is reasonableness. *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005). A search or seizure conducted without a warrant is unreasonable per se unless the search or seizure falls "within one of the narrow, specific exceptions to the warrant requirement." *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). One such exception is voluntary consent. *Dagwan*, 269 Mich App at 342. Such consent can be limited in scope, and "the constitutional standard for determining the scope of a consent to search is that of 'objective reasonableness'—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 343 (quotation marks and citation omitted).

Here, it is undisputed that defendant freely and voluntarily consented to a search of his vehicle for weapons. Defendant contends that "the glass tube was not a weapon and fell outside the scope of consent," and he is correct insofar as he did not consent to Dykema seizing the glass tube when he allowed Dykema to search his car for weapons. Accord *Mahdi*, 317 Mich App at 461-462 (holding that consent to search an "apartment for the limited purpose of uncovering illegal drugs did not constitute consent to seize *any* item," so "[t]he seizure of the wallet, keys, and cell phone . . . fell outside the scope of [the] consent"). But no one has ever disputed this. Rather, the trial court reasoned that Dykema's search of *the center console* did not exceed the scope of defendant's consent to search the vehicle for weapons because a reasonable person would have understood that consenting to search a vehicle for weapons included consent to search any location in the vehicle that a weapon could be concealed, such as the center console. We agree and accordingly conclude that Dykema lawfully searched the center console of defendant's vehicle because doing so was within the scope of defendant's consent to search the vehicle for weapons.

As for the search and seizure of the glass tube itself, the trial court reasoned that it was justified by the plain-view or plain-feel exception to the warrant requirement. "The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996). The plain-feel exception similarly allows the seizure without a warrant of an object that an officer feels during a legitimate search if the object's "incriminating character is immediately apparent" and

the officer has probable cause to believe that the object to contraband. *Id*. at 105-106.[2] These exceptions allow *seizures* of incriminating items, but "[n]o searching, no matter how minimal, may be done under the auspices" of either exception. *Id*. at 101.

It is unclear from the facts to which the parties stipulated whether Dykema saw the glass tube before seizing it, or whether he seized the tube only after feeling it in the center console. Citing Dykema's bodycam recording, defendant wrote in his motion to suppress, "After opening the center console, [Dykema] shuffles items around with his hand for approximately 10 seconds. After 12 seconds, he picks up a clear, glass tube from the console." On these opaque facts, the trial court reasoned that "based on just feel if not plain view, a vile of some sort like that to an officer who in his training and experience could anticipate that maybe there would be drugs." Later, the court reasoned that "based on plain view and then through his own training and experience had the ability to pick that up and seize [the glass tube]."

There are two problems with this reasoning. First, as already alluded to, it is not clear from the stipulated facts whether Dykema observed the glass tube before picking it up, and, notably, the prosecution never claimed that Dykema did, in fact, see the glass tube before seizing it. On this record, we can only conclude that the prosecution failed to carry its burden of establishing that Dykema saw the glass tube before seizing it, which necessarily means that the trial court erred by holding that Dykema's seizure of the glass tube was permissible under the plain-view exception to the warrant requirement.

The second problem with the lower court's holding is that there is no evidence in the record to support that the incriminating nature of the glass tube would have been immediately apparent to Dykema on the basis of his training and experience. As explained above, the prosecution stipulated to the statement of facts that defendant provided in his motion to suppress with the caveat that, on the basis of his training and experience, Dykema would have immediately recognized the incriminating nature of the glass tube. The prosecution did not walk this back at the hearing on defendant's motion—the prosecution agreed with the trial court that it had "stipulated essentially to the facts," which was accurate because, again, the prosecution stipulated to defendant's statement of facts with a significant caveat. Equally significant, however, is that defendant never stipulated to the prosecution's claim that Dykema had the training and experience necessary to immediately recognize the incriminating nature of the glass tube. This factual dispute would have been irrelevant if its resolution was not necessary for the trial court to render its decision, but that was clearly not the case because the trial court relied on Dykema's purported training and experience to reach its conclusion.

This problem can be resolved in one of two ways. First, we could conclude that, due to the lack of evidence concerning Dykema's training and experience, the trial court clearly erred by finding that the incriminating nature of the glass tube was immediately apparent to Dykema due to his training and experience, and the court consequently erred by concluding that the seizure of the glass tube was permissible under the plain-feel exception. But this would not fully resolve defendant's motion to suppress because the case would still have to be remanded for the trial court

---

[2] Defendant does not argue that the plain-feel exception is inapplicable under the facts of this case, so we assume that it is without deciding the issue.

-4-

to decide whether to apply the exclusionary rule.  See *People v Hawkins*, 468 Mich 488, 499; 668 NW2d 602 (2003); *Illinois v Gates*, 462 US 213, 223; 103 S Ct 2317; 76 L Ed 2d 527 (1983) ("The question whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.").  That decision would not be an easy one under the circumstances because "the aim of the [exclusionary] rule is one of police deterrence," *Hawkins*, 468 Mich at 499, and it is not clear what police misconduct would be deterred by suppressing evidence where a Fourth Amendment violation is found simply because the record is undeveloped.  See also *United States v Leon*, 468 US 897, 906; 104 S Ct 3405; 82 L Ed 2d 677 (1984) (explaining how the exclusionary rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect") (quotation marks and citation omitted).

Alternatively, we could conclude that the trial court erred by failing to hold an evidentiary hearing to resolve a material factual dispute, and that remand is necessary for the court to do what it should have done in the first instance—hold an evidentiary hearing in which it can hear from Dykema and determine whether he had training and experience that would have made the incriminating nature of the glass tube immediately apparent.  Because this case needs to be remanded for further proceedings either way, we conclude that the latter option is the more prudent one.  We therefore remand this case to the trial court for that court to hold an evidentiary hearing on defendant's motion to suppress.  If, following that hearing, the court concludes that the glass tube was illegally seized, it can then decide whether the exclusionary rule should apply.  We also note that, by holding an evidentiary hearing, the court will presumably be able to ascertain whether Dykema saw the glass tube before seizing it, and thus decide whether the plain-view or the plain-feel exception to the warrant requirement applies.[3]

The trial court's order denying defendant's motion to suppress is vacated, and the case is remanded for the trial court to hold an evidentiary hearing on the motion.

Vacated and remanded for further proceedings.  We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica

---

[3] We also note that, if only the plain-feel exception applies, the trial court will need to explain why Dykema had probable cause to believe that the glass tube that he felt was contraband, i.e., what training and experience Dykema had that led him to believe that, under the totality of the circumstances, there was a probability or substantial chance that what he felt in the center console of defendant's vehicle was contraband.  See *Champion*, 452 Mich at 112 n 11 (explaining what the "probable cause" standard requires); *id*. at 112-113 (explaining how "applying the plain feel exception must appreciate the totality of the circumstances").